```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

MARK LUBLIN, et al.,                :      CIVIL ACTION
                                    :      NO. 07-3422
        Plaintiffs,                 :
                                    :
    v.                              :
                                    :
AMERICAN FINANCIAL                  :
GROUP, INC., et al.,                :
                                    :
        Defendants.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              JUNE 20, 2013

Mark Lublin ("Plaintiff")[1] commenced this diversity action[2] against American Financial Group, Inc., American Spirit Insurance Company, Great American Spirit Insurance Company, Great American Insurance Company, Great American Insurance Companies, Great American Insurance Group, and Great American Insurance Specialty Auto Group ("Defendants") for compensatory and punitive damages and attorney's fees related to Plaintiff's underinsured motorist claim in the Montgomery County Court of

---

[1] Mark Lublin is now deceased. On February 16, 2012, Executors of the Estate of Mark Lublin, Robert J. Lublin and Anne E. Lazarus, were substituted as Plaintiffs. Order, ECF No. 35.

[2] Plaintiff was an individual residing in Pennsylvania. Am. Compl. ¶ 1, ECF No. 19. The admitted Defendants are Ohio corporations with principal places of business in Cincinnati, Ohio. Notice of Removal ¶¶ 6-11, ECF No. 1.

Common Pleas. Infinity Standard Insurance Company ("Defendant") was later substituted as the sole defendant in this action.[3] Defendant removed the action to the Eastern District of Pennsylvania on August 17, 2007. Notice of Removal 2. Defendant filed a motion for summary judgment to which Plaintiff responded in opposition. Def.'s Mot. Summ. J. 1, ECF No. 39; Pl.'s Resp. to Def.'s Mot. Summ. J. 1, ECF No. 40 ("Pl.'s Resp."). This motion is now ripe for disposition.

I.   **BACKGROUND**

Plaintiff alleges that a vehicle operated by John Nicholas struck Plaintiff's vehicle from behind on June 2, 2001 when both individuals were driving eastward on Robbins Avenue in Philadelphia, Pennsylvania. Am. Compl. ¶¶ 15-17. Prior to the collision, Plaintiff stopped his vehicle when a passenger of a parked car opened her car door into Plaintiff's travel lane. Id. ¶ 17. Plaintiff alleges several injuries as a result of the accident, including a herniated disc, annular tearing of a disc, cervical radiculopathy, acute denervation, aggravation of pre-existing spinal conditions, and sprain and strain of the cervical spine, lumbar spine, thoracic spine, and infraspinitis

---

[3] Defendant, formerly known as Windsor Insurance Company, assumed Plaintiff's insurance liabilities effective January 1, 2003 through transactions with the prior Defendants. Stip. ¶¶ 1-7, ECF No. 18.

tendonitis. Id. ¶ 19. In addition to physical injuries, Plaintiff alleges that he has suffered emotional distress and other damages, including lost wages resulting from his decreased capacity to work. Id. ¶¶ 20-22; Employer Wage Loss Correspondence, Am. Compl. Ex. 9.

At the time of the accident, Plaintiff was insured by American Spirit Insurance Company, now known as Great American Insurance Company, through Policy Number SDS 3405526. Am. Compl. ¶ 14. On November 8, 2002, Nicholas's automobile insurance company, AIG Specialty via New Hampshire Indemnity, agreed to settle Plaintiff's claim related to the collision for the $15,000 policy limit. AIG Correspondence, Am. Compl. Ex. 3. Following this settlement, Plaintiff submitted an underinsured motorist claim to American Spirit Insurance Company in December 2002 to Senior Liability Claims Adjustor, Frederick Lubrecht. Stip. ¶ 4; Underinsured Motorist Claim Correspondence, Am. Compl. Ex. 9. The policy included a stacking option of the underinsured motorist bodily injury provisions of $100,000 per individual and $300,000 per accident. Annual Automobile Policy, Am. Compl. Ex. 2. Plaintiff demanded payment of the full policy limits for the accident, or alternatively, an arbitration of the claim with a neutral arbitrator. Underinsured Motorist Claim Correspondence, Am. Compl. Ex. 9.

Effective January 1, 2003, Defendant assumed responsibility for Plaintiff's claim. Stip. ¶ 7. Plaintiff alleges that Defendant did not inform him of this policy transfer or that Mr. Lubrecht was removed from handling the claim until after the Arbitration Hearing on July 15, 2005. Am. Compl. ¶¶ 50-51. Plaintiff also contends that Defendant's attorney, Vincent Reilly, represented that he was retained by Great American Insurance Company on January 3, 2003, notwithstanding the policy conveyance. Reilly, Janiczek & McDevitt Correspondence, Am. Compl. Ex. 10. On July 15, 2005, the arbitrator awarded Plaintiff $232,000 after a set-off of $15,000, the amount of Nicholas's policy disbursement. Arbitration Finding Correspondence, Am. Compl. Ex. 17. Plaintiff alleges that Defendant paid this arbitration award with a check from Great American Spirit Insurance Company despite the policy transfer. Am. Compl. ¶ 53.

Plaintiff alleges that Defendant requested numerous documents on several occasions: federal income tax forms, automobile title, proof of state vehicle registration, driver's license, and police reports on January 13, 2003; additional unspecified documents on January 16, 2003; financial and professional records on December 5, 2003; and various other documents on unspecified dates. Am. Compl. ¶¶ 61-62, 71, 74, 77. Plaintiff contends that he provided all requested and

appropriate documentation to file a complete claims package.
Supplemental Undisputed Facts by Plaintiff, Pl.'s Resp. to
Def.'s Mot. Summ. J. 6. Plaintiff also alleges that Defendant's
requests for documentation were overly burdensome and
unreasonable, and he asserts that the investigation was
conducted in bad faith in order to delay settlement. Id. at 6-8.
Defendant contests that Plaintiff's claims package was complete.
Def.'s Mot. Summ. J. 2. Defendant alleges that Plaintiff never
corroborated his loss of wages and earning capacity claims
through documentation to support settlement demands of $225,000
and subsequently $275,000. Id.

Regarding an appropriate settlement for Plaintiff's
claim, Plaintiff alleges that Defendant's counsel initially
suggested a range of $150,000 to $175,000. Pl.'s Resp. 6.
Defendant ultimately suggested a settlement offer of $75,000,
believing that Plaintiff's credibility had been compromised.
Counsel's Correspondence to Def., Def.'s Statement of Undisputed
Facts in Supp. of Def.'s Mot. Summ. J. Ex. 7. Furthermore,
Plaintiff alleges that Defendant erroneously suggested that
Plaintiff failed to protect Defendant's subrogation rights by
filing suit against the passenger who opened her car door into
Plaintiff's travel lane at the time of the accident. Pl.'s Resp.
6. For the foregoing reasons, Plaintiff argues that Defendant
acted in bad faith throughout the claim investigation and

5

unreasonably denied him benefits.

## II. PROCEDURAL HISTORY

On July 13, 2007, Plaintiff filed a complaint against Defendants in the Court of Common Pleas for Montgomery County seeking compensatory and punitive damages in excess of $50,000 for conduct related to Plaintiff's underinsured motorist claim and violation of 42 Pa. Cons. Stat. § 8371 (1990). Compl. 1-2, 18, Notice of Removal, Ex. A. On August 17, 2007, Defendants filed a Notice of Removal to the United States District Court for the Eastern District of Pennsylvania on the basis of diversity of citizenship. Notice of Removal 2. Defendants answered Plaintiff's complaint on August 24, 2007. Answer 1, ECF No. 4.

On November 19, 2007, Plaintiff moved to amend the complaint and add an additional Defendant, Infinity Standard Insurance Company. Pl.'s Mot. Amend. 1-2, ECF No. 16. The parties later filed a stipulation to allow Plaintiff to amend the complaint to substitute Infinity as the Defendant for all named Defendants. Stip. 1. Plaintiff filed an amended complaint on December 18, 2007. Am. Compl. 1. On January 2, 2008, Defendant answered. Def.'s Answer Am. Compl. 1, ECF No. 21.

Defendant moved for summary judgment on September 27, 2012. Def.'s Mot. Summ. J. 1. Plaintiff responded to the motion

6

and requested sanctions. Pl.'s Resp. 1. Defendant subsequently moved for leave to file a reply in support of summary judgment. Def.'s Mot. Leave to File Reply 1, ECF No. 41.

**III. LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court must view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the

initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Federal courts sitting in diversity generally apply the substantive choice-of-law rules of the forum state, which is Pennsylvania. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005). Here, the parties rely on Pennsylvania law in their written submissions to the Court, which indicates their agreement that Pennsylvania law governs the interpretation of the instant insurance contract. Therefore, to the extent the law of a state other than Pennsylvania would control, the parties waive the issue and Pennsylvania law will apply. See Advanced Med., Inc. v. Arden Med. Sys., Inc., 955 F.2d 188, 202 (3d Cir. 1992); Mellon Bank v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1005 n.1 (3d Cir. 1980).

**IV. DISCUSSION**

Plaintiff asserts that Defendant acted in bad faith while processing Plaintiff's underinsured motorist claim and thus violated Pennsylvania law. Defendant moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, arguing that Plaintiff has not met his burden of producing clear

8

and convincing evidence required for proving bad faith. Fed. R. Civ. P. 56. Plaintiff opposes this motion, arguing that Defendant has not met its burdens under Rules 12, 52, and 56 of the Federal Rules of Civil Procedure. Plaintiff avers that Defendant's bad faith liability includes a failure to communicate, insufficient investigations of an insured's claim, unreasonable refusals to settle claims, and assertions of spurious defenses.[4]

A.  Bad Faith Standard Under Pennsylvania Law

Under Pennsylvania law, a cause of action may be brought by insured parties against their insurer for bad faith. See 42 Pa. Cons. Stat. § 8371 (1990). Bad faith is defined as:

> Any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Burrell v. United Healthcare Ins. Co., No. 00-4697, 2001 WL 873221, at *1 (E.D. Pa. July 30, 2001) (Robreno, J.) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688

---

[4] Although Plaintiff's submissions are long in rhetoric, the Court notes that Plaintiff has failed to support his legal arguments with any citations to the record. See Pl.'s Resp.

9

(Pa. Super. Ct. 1994)).

To prevail on a bad faith claim against Defendant, Plaintiff must establish by clear and convincing evidence: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky, 649 A.2d at 688).

To meet the clear and convincing evidence standard, the evidence must be "so 'clear, direct, weighty and convincing' so as to enable the court to make its decision with 'a clear conviction.'" Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 752 (3d Cir. 1994) (citing In re Estate of Fickert, 337 A.2d 592, 594 (Pa. 1975)); see also U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985) (holding that a bad faith claim must be met through the clear and convincing evidence standard).

B.  Analysis

To determine whether Defendant's conduct rises to the level of bad faith, the Court must consider whether the alleged policy transfer, attorney communication, claim investigation, settlement offer, and consideration of a subrogation defense meet the bad faith standard. The Court will analyze each claim

10

in turn.

        1.   <u>Policy Transfer and Attorney Communication</u>

Plaintiff argues that Defendant's failure to notify him of his insurance policy transfer from American Spirit Insurance Company to Infinity Standard Insurance Company and the removal of Claims Adjustor Lubrecht, effective on January 1, 2003, constitute bad faith. Am. Compl. ¶¶ 50-51. Although the initial claim was submitted to American Spirit Insurance Company in December 2002, Plaintiff contends that he was not notified of the policy transfer until July 2005. <u>Id.</u> Plaintiff also emphasizes that on January 3, 2003, Vincent Reilly, Defendant's attorney, held himself out as a representative of Great American Insurance Company despite his actual representation of Infinity Standard Insurance Company. Reilly, Janiczek & McDevitt Correspondence, Am. Compl. Ex. 10. For purposes of bad faith litigation, an insurance company "is chargeable with the actions of its attorney. As such, it is also chargeable with his inactions." <u>Klinger</u>, 115 F.3d at 234. Therefore, Defendant is responsible for any misrepresentations that Reilly made, whether through conduct or omission. Finally, Plaintiff underscores that the arbitration award was paid by a check from Great American Spirit Insurance Company.

Plaintiff highlights the Third Circuit's opinion in <u>General Refractories Co. v. Fireman's Fund Insurance Co.</u> in

arguing that repeated misrepresentations made by an insurer and its attorneys may amount to bad faith conduct. 337 F.2d 297, 301 (3d Cir. 2003). Gen. Refractories Co. is distinguishable from the case at issue, however, as the court in Gen. Refractories Co. recognized the defendant's "clear pattern of delay, stonewalling, deception, obfuscation and pretense." Id. Furthermore, the court found that the "[d]efendant intentionally withheld critical documents, ignored court orders, permitted false testimony at depositions and misrepresented facts to opposing counsel and the court." Id. Though the actions of Defendant and its attorney may appear suspicious to Plaintiff, the alleged failure to notify Plaintiff of the policy transfer and the removal of the claims adjuster do not rise anywhere near the degree of misrepresentation demonstrated in Gen. Refractories Co. In any event, Plaintiff fails to explain how these alleged misrepresentations affected his underinsured motorist claim. Pl.'s Resp. 12.

Under these circumstances, Plaintiff has not presented clear and convincing evidence that Infinity Standard Insurance Company knew or recklessly disregarded its lack of reasonable basis to deny benefits. On the contrary, despite the transfer of the policy, Defendant continued to process the claim and satisfied the arbitration award to Plaintiff. Thus, a reasonable jury could not conclude that Defendant's conduct related to the

12

policy transfer is clear and convincing evidence of bad faith.

2. <u>Claim Investigation</u>

Plaintiff contends that Defendant requested unnecessary documentation on several occasions in order to harass Plaintiff and delay settlement. Am. Compl. ¶¶ 61-62, 71, 74, 77. Defendant argues that the requested documents were reasonable and necessary to form a complete claims package. Def.'s Mot. Summ. J. 2. Defendant also disputes that Plaintiff returned all necessary documentation and particularly emphasizes that Plaintiff failed to corroborate his loss of wages and earning capacity figures. <u>Id.</u>

Investigative efforts are not unreasonable when the claim's value is ambiguous. <u>Williams v. Hartford Cas. Ins. Co.</u>, 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000). As stated in <u>Williams</u>, "while liability was clear, the value of plaintiff's claim was not, and therefore [the defendant] acted reasonably in undertaking an investigation of the claim." <u>Id.</u> In determining loss of earning capacity, the consideration "is not solely the comparative amount of money earned before and after an accident. The test is whether there is a loss of earning power and of the ability to earn money." <u>Williams v. Dulaney</u>, 480 A.2d 1080, 1087 (Pa. Super. Ct. 1984) (citations omitted). Therefore, an injured plaintiff may recover for loss of future earning capacity even if he does not suffer reduced earnings immediately after the

13

injury. Id.; see also Sherman v. Mfrs. Light & Heat Co., 389 Pa. 61, 64 (1957) (holding that plaintiff's earnings subsequent to injury, as compared with his earnings at time of injury, "are merely evidence, but not conclusive evidence as to whether his earning power has been diminished by the accident"); Hrabak v. Hummel, 55 F. Supp. 775, 779 (E.D. Pa. 1943) ("[P]ast earnings are only one of the factors to be taken into consideration. . . . other factors are a plaintiffs age, condition, station in life, occupation, health and surroundings."). Loss of earning capacity requires a fact-specific calculation that may call for investigation of different variables.

Plaintiff relies on Craker v. State Farm Mutual Automobile Insurance Co. for the proposition that a reasonable jury could find bad faith when "the record reflects no reasonable basis for [the evaluation that the plaintiff's lost wages included a lack of employment for two years and a return to the same work thereafter] other than the claims representatives' personal opinions." No. 11-0225, 2012 WL 1134807, at *1, *9, *12 (W.D. Pa. Apr. 4, 2012). Here, Plaintiff offered a letter from his employer indicating that, from the time of his accident until the end of 2001, he earned $35,000 less and was more limited in his work abilities than the year preceding the accident. Employer Wage Loss Correspondence, Am. Compl. Ex. 9. Defendant emphasizes, however, that Plaintiff

14

suffered no loss in total amount of billable hours worked as an attorney following the accident. Bonini Dep. and Email Correspondence, Def.'s Mot. Summ J. Ex. 16-17. Given that the billable hours records that Plaintiff provided were inconsistent with Plaintiff's wage loss claim, a reasonable jury could not conclude that Defendant's requests and continued investigative efforts are clear and convincing evidence of bad faith.

Under Pennsylvania law, investigative delay is a relevant factor in determining whether an actor's conduct was in bad faith, but it is not dispositive. Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 588-589 (E.D. Pa. 1999).

> [A] long period of time between demand and settlement does not, on its own, necessarily constitute bad faith. Rather, courts have looked to the degree to which a defendant insurer knew that it had no basis to deny the claimant; if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred.

Id.; see also Williams 83 F. Supp. 2d at 572 (holding that even though insurance company could have completed claim investigation more quickly, delay was not clear and convincing evidence for jury to determine presence of bad faith).

Here, Defendant denies that any delay was a result of bad faith and argues that the requested documents were necessary for a complete investigation, escaping the classification of bad faith under the Kosierowski standard. Beyond his expert witness'

15

report, Plaintiff has not pointed to any specific facts in the record suggesting that the delay was in bad faith. Expert Witness Report, Pl.'s Resp. 1, Ex. F. Plaintiff's expert report similarly fails to include specific facts to support such a claim. Id. Therefore, Plaintiff has not submitted evidence that reaches the clear and convincing evidence standard for bad faith.

### 3. Settlement Offer

Plaintiff argues that Defendant's settlement offer of $75,000 was improper, especially given that Defendant's counsel initially suggested a settlement range of $150,000 to $175,000. Pl.'s Resp. to Def.'s Mot. Summ. J. 6; Reilly, Janiczek & McDevitt Email Correspondence, Def.'s Mot. Summ. J. Ex. 7. Defendant counters that Plaintiff never supported his settlement demand figures of $225,000 and $275,000 through sufficient documentation showing wage loss and loss of earning capacity. Def.'s Mot. Summ. J. 2.

Plaintiff points to Hollock v. Erie Insurance Exchange, in which a defendant who "low-balled" the plaintiff during settlement negotiations was found to have acted in bad faith. 842 A.2d 409, 412 (Pa. Super. Ct. 2004). In Hollock, "the arbitrators entered a gross award for [the plaintiff] of $865,000, well in excess of [the plaintiff's] policy limits and approximately 29 times the amount of [the defendant's]

16

settlement offer." Id. Aside from the greater disparity between the settlement offer and arbitration award, additional factors distinguish Hollock from this case. Most importantly, in Hollock, "the trial court specifically found that 'most of the testimony of [the defendant's] employees was an intentional attempt to conceal, hide, or otherwise cover-up the conduct of Erie employees in the handling of the [plaintiff's] claim.'" Id. at 416. Furthermore, "the trial court concluded, based upon its specific factual findings and credibility determinations, that [the defendant] did not act reasonably in investigating, evaluating and paying [the plaintiff's] claim." Id. at 417. Therefore, the trial court found no reasonable basis for denying the plaintiff benefits.

Here, Plaintiff has not offered any evidence to support his claim, much less clear and convincing proof, that Defendant participated in similar improper behavior. In this case, Defendant's alleged low valuation of Plaintiff's injuries, alone, is insufficient to prove bad faith:

> [N]egotiating by offering a figure at the low end of the settlement range does not necessarily constitute bad faith, particularly when the valuation of the injuries and damages of a claim is difficult. Here, in light of the uncertainties regarding [the plaintiff's] future earning power and the inherently subjective nature of much of the plaintiffs' damages, a reasonable jury could not find [the defendant's] lower valuation of the

17

> claim to be clear and convincing evidence of
> bad faith.

Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 576 (E.D. Pa. 2000); see also Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 592 (E.D. Pa. 1999) ("Even cases such as Klinger that acknowledge that a refusal to settle may constitute bad faith so hold only when the amount in question is clearly known by the insurer." (citing Klinger, 115 F.3d at 233)); Terletsky, 649 A.2d at 688-89 (holding that defendant's low settlement offers were not evidence of bad faith because many factors, including medical ambiguities, injury severity, car damage, and liabilities of each driver, were used to determine settlement values and were thus reasonably based).

Defendant's valuation of Plaintiff's injuries and eventual settlement offer are not prima facie evidence of bad faith. Given the particular ambiguity surrounding the Plaintiff's lost wages and earning capacity calculations, Defendant's settlement negotiations and offer were not unreasonable. These facts therefore fail the clear and convincing evidence standard of proving bad faith.

4. Subrogation Defense

Plaintiff contends that Defendant acted in bad faith by asserting a spurious defense that Plaintiff failed to protect Defendant's subrogation interests. Arbitration Materials, Am.

18

Compl. Exs. 15-16. Plaintiff's Great American Insurance Policy ("the Policy") states, "If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right." The Policy, Am. Compl. Ex. 2. Furthermore, the Policy clarifies, in relevant part, that the subrogation rights do not apply in an underinsured motorist claim if the insurance company was "given prompt written notice of a tentative settlement between an insured and the insurer of an underinsured motor vehicle." Id. An ambiguity exists in the Policy as applied to Plaintiff's particular case: it is unclear whether the settlement with Nicholas's insurer is sufficient to void Defendant's subrogation interest or whether such settlement should have been made with the woman who opened her car door into Plaintiff's travel lane. Defendant contends that the defense was not asserted as a main issue during the arbitration, was not used in Defendant's valuation of the claim, and thus should be ignored. Def.'s Mot. Summ. J. 16-17.

Even if the policy ambiguity were resolved in Plaintiff's favor, thus voiding Defendant's subrogation interest, that Defendant asserted a subrogation defense is not clear and convincing evidence of bad faith. See Hyde Athletic Indus., Inc. v. Cont'l Cas. Co., 969 F. Supp. 289, 307 (E.D. Pa. 1997) (holding that insurance company's "aggressive defense of

19

its interest is not bad faith"); cf. Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 574 (E.D. Pa. 2000) ("[I]f the insurer's reliance on an incorrect interpretation of the law was reasonable, bad faith cannot be found even if its analysis of the law was wrong." (citing Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 359 (E.D. Pa. 1997))). Furthermore, Defendant has not asserted any subrogation right as an affirmative defense in the present action. Therefore, any concerns related to the existence of a subrogation defense are irrelevant in the current case.

### C. Plaintiff's Request for Sanctions

Plaintiff's request for sanctions against Defendant is based on his belief that Defendant's filing of the motion for summary judgment is frivolous and constitutes harassment. Since the Court will grant Defendant's motion for summary judgment, Plaintiff's request for sanctions will be correspondingly denied.

## V. CONCLUSION

For the reasons set forth above, the Court will grant Defendant's motion for summary judgment.